UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CARLTON HENDERSON,

Plaintiff,

v. CASE NO. 3:21-cv-1043-MCR

ACTING COMMISSIONER OF
THE SOCIAL SECURITY
ADMINISTRATION,

Defendant.
_________________________________/

**MEMORANDUM OPINION AND ORDER**[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision regarding his application for a period of disability and disability insurance benefits ("DIB"). Following an administrative hearing held by telephone on February 25, 2021, the assigned Administrative Law Judge ("ALJ") issued a decision, finding Plaintiff not disabled from December 26, 2016, the alleged disability onset date, through March 9, 2021, the date of the ALJ's decision.[2] (Tr. 15-68.) Based on a review of the record, the briefs, and the applicable law, the Commissioner's decision is

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 16.)

[2] Plaintiff had to establish disability on or before December 31, 2021, his date last insured, in order to be entitled to a period of disability and DIB. (Tr. 16.)

**REVERSED and REMANDED**.

## I. Standard of Review

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II. Discussion

### A. Issues on Appeal

Plaintiff raises three issues on appeal. First, he argues that the ALJ's Residual Functional Capacity ("RFC") assessment regarding the frequency of his need to alternate positions (every 30 to 60 minutes) was an arbitrary finding and was not supported by the evidence. (Doc. 23 at 1, 9.) Plaintiff states that the ALJ did not explain how she concluded that Plaintiff needed to change positions every 30 to 60 minutes or the basis for her finding that Plaintiff would be able to stay on task while making the position change. (*Id.* at 10; *see also id.* at 12-13 ("No physician opined to this capacity and Mr. Henderson never said he had such a capacity.").)

Plaintiff adds that the ALJ also failed to state how long he would need to remain in the new position before changing positions again pursuant to Social Security Ruling ("SSR") 96-9p. (*Id.* at 9; *see also id.* at 11 ("The ALJ, in this case, never stated how long Mr. Henderson would have to stand before he could return to a sitting position. The ALJ may have meant that Mr. Henderson only needed to stand for a few minutes – but the ALJ never made that finding and it is unclear what the [vocational expert (VE)] presumed.").) Plaintiff explains this was not a harmless error because "other courts analyzing the matter have concluded that the frequency and [the] length of time for the change of position is [sic] vocationally relevant." (*Id.* at 10.)

Here, the VE testified that if Plaintiff was off task more than 10% of the workday, all work would be precluded. (*Id.* at 10-11.) According to Plaintiff, the frequency and the length of position changes are critical facts towards analyzing off-task behavior. (*Id.* at 13.)

Second, Plaintiff argues that the ALJ's evaluation of Plaintiff's testimony is not supported by substantial evidence in violation of SSR 16-3p. (*Id.* at 1, 15.) Plaintiff explains the ALJ erroneously assumed that his migraines were controlled by medication, that he was successfully attending college classes, and that he was not having fluctuations in his functioning due to pain and migraines. (*Id.*) Plaintiff adds that the ALJ failed to address his declining condition, which was reflected in his hearing testimony and was consistent with the medical evidence revealing ongoing treatment for pain and migraines, and also failed to articulate adequate rationale for rejecting his testimony regarding the limiting effects of his pain, adverse reactions to pain medications, and aggravating and alleviating factors, including the need to constantly adjust his position. (*Id.* at 17-20.)

Third, Plaintiff argues that the ALJ's rationale for finding Plaintiff moderately limited in concentration, persistence, and pace was contrary to the evidence and inconsistent with the treating and examining opinions. (*Id.* at 1, 21.) Specifically:

Both Dr. [Frank] Stanley and Dr. [Jessica] Anderton opined that

> Mr. Henderson's condition met or equaled mental health listings and both concluded that Mr. Henderson would have marked to extreme limitations in the ability to sustain concentration, persistence and pace. The ALJ largely rejected both medical opinions, in part based on earlier evidence – the ALJ even admits that she was comparing Dr. Stanley's opinion to "earlier" evidence. As far as Dr. Anderton's opinion, she states she finds her opinion to be persuasive as far as "moderate" limitations, but the form completed by Dr. Anderton defines "moderate" in a manner that would require additional limitations that were not found by the ALJ. Tr. 2734. Finally, the ALJ repeatedly kept focusing on Mr. Henderson's ability to attend school but, as explained above, he was not doing so successfully and he was failing classes which is why he was only taking one class at the time. As explained below, the ALJ's evaluation of Mr. Henderson's capacity to sustain attention, concentration and pace was not supported by the record, especially after March 2020.
> . . .
> The ALJ rejected Dr. Stanley's opinion because Dr. Stanley thought that Mr. Henderson's limitations existed in 2016 but failed to adequately explain why she was discounting the opinion as to 2020 when Mr. Henderson was experiencing worsening impairment. Given that the record contains no contradictory opinions and the ALJ failed to provide concrete reasons (especially as to 2020 through the date of the ALJ's decision) to reject the supportability and consistency of the two opinions, Mr. Henderson respectfully requests reversal and remand for proper analysis.

(*Id.* at 21-22, 24-25.)

In regards to Plaintiff's first argument, Defendant responds that the ALJ's RFC finding about Plaintiff's need for a sit/stand option is sufficiently clear and supported by substantial evidence. (Doc. 24 at 3.) Defendant explains:

> As an initial matter, contrary to Plaintiff's argument (*see* Pl.'s Br. at 9), the RFC finding states the length of time he

> needed to spend in the alternate position (Tr. 20). The "alternate position" for sitting is standing; it is a "sit/stand option" (Tr. 20). And the RFC says Plaintiff can alternate between sitting and standing every 30 to 60 minutes as needed (Tr. 20). Therefore, the RFC clearly states the length of time Plaintiff needed to spend in the alternate position (Tr. 20).
>
> Contrary to Plaintiff's assertion (see Pl.'s Br. at 9-10), the ALJ sufficiently explained the basis for a 30-to-60-minute sit/stand option (Tr. 22-26). The ALJ discussed the medical evidence in great detail, including examination results showing a lack of neurological deficits, consultative examiner Dr. Ken Porche's examination findings, and treatment notes reflecting a conservative treatment history (Tr. 22-26). And the ALJ explained that the evidence does not support greater physical restrictions (Tr. 25-26). In assessing Plaintiff's RFC, the ALJ was not required to point to a medical opinion or other source specifying that Plaintiff needed to sit/stand every 30-60 minutes.
>
> Moreover, . . . the ALJ was not required to defer to Plaintiff's subjective reports, including his testimony that he could sit and stand in 15-minute increments (Tr. 49). But even if Plaintiff were limited to sitting and standing in 15-minute increments, he could still perform the jobs the VE identified (Tr. 65). The VE testified that the jobs can and are performed with a sit/stand option (Tr. 65). He did not testify that the sit/stand option was limited to instances when a claimant changed positions every 30 to 60 minutes (Tr. 65).
>
> Plaintiff also argues that the ALJ failed to account for him being off task while changing positions. *See* Pl.'s Br. at 10-11. But the movements of rising from sitting and sitting from standing take no more than a couple of seconds. Throughout the course of an 8-hour workday, this would amount to about one minute total, far less than 10% of the workday (48 minutes), the percentage of time the VE testified employers will tolerate an employee being off task (Tr. 66). So even if Plaintiff were off task when he changed positions, he could still perform the jobs the VE identified.

(*Id.* at 4-5.)

In regards to Plaintiff's second argument, Defendant responds that the

ALJ was not required to defer to Plaintiff's subjective complaints because they were not fully supported. (*Id.* at 6.) Defendant states that contrary to Plaintiff's contention, the ALJ considered the alleged worsening of his condition by considering Plaintiff's testimony and the medical evidence, including treatment records, examining records, diagnostic studies (including MRIs from 2017 and 2020), and the course of treatment. (*Id.* at 7.) According to Defendant, the ALJ properly considered Plaintiff's migraines and daily activities as a factor in the subjective symptom analysis. (*Id.* at 8-10.) With respect to Plaintiff's daily activities, Defendant explains:

> Plaintiff argues that the ALJ failed to account for his testimony that after the pandemic in 2020, when his wife was also at home to assist with the children and household chores, his activities became more restricted due to worsening symptoms. *See* Pl.'s Br. at 15-21. However, the ALJ was not required to credit that testimony over Plaintiff's prior reports, especially since she did not find the medical evidence supported a decline in functioning. Furthermore, even if Plaintiff's activities did decrease, this does not erode the ALJ's conclusion that his activities prior to 2020 were not consistent with his disability allegations and therefore undermine the validity of all of his subjective complaints.
>
> The ALJ also noted that despite Plaintiff's alleged lack of focus, he was taking an online class, as well as other classes since January 2020 (Tr. 26, 46, 62, 1432, 2714). The ALJ did not state that Plaintiff excelled academically (Tr. 26). However, Plaintiff asserts that the ALJ erred by not noting that he failed two classes when taking them simultaneously, and then took only one class, with difficulty (Tr. 62). *See* Pl.'s Br. at 15-21. But even if Plaintiff did poorly in those classes, his continued enrollment in college supports a finding that he could at least perform the unskilled, simple, not fast[-]paced work with infrequent tasks

> changes as set forth in the RFC finding (Tr. 20). Moreover, Plaintiff's college attendance was just one of several activities he performed suggesting sufficient concentration for simple work. Substantial evidence supports the ALJ's decision even absent evidence of Plaintiff's college attendance.

(*Id.* at 9-10.)

As to Plaintiff's third argument, Defendant responds that substantial evidence, including objective examination findings, conservative treatment history, and daily activities, supports the ALJ's mental RFC finding with respect to Plaintiff's limitations in concentration, persistence, and pace. (*Id.* at 11-13.) To the extent Plaintiff argues that the ALJ should have found him more limited based on the opinions of Dr. Anderton and Dr. Stanley, Defendant argues the ALJ properly evaluated these opinions and substantial evidence supports her finding that they were not fully persuasive. (*Id.* at 13-16.)

### B. The ALJ's Decision

At step two of the sequential evaluation process,[3] the ALJ found that Plaintiff had the following severe impairments: lumbar degenerative disc disease; plantar fasciitis; obesity; an adjustment disorder with anxiety and depression; and a dysthymic disorder. (Tr. 18.) The ALJ found that

[3] The Commissioner employs a five-step process in determining disability. *See* 20 C.F.R. § 404.1520(a)(4).

Plaintiff's migraine headaches, right shoulder pain, neck pain, gastroesophageal reflux disease ("GERD"), sleep disorder, and hypertension were non-severe impairments because they caused only minimal work-related limitations. (*Id.*) The ALJ explained:

> Specifically, there is evidence of migraine headaches; however, the claimant's headaches are managed with medications, as detailed in the treating source records below, and he has not required emergency department treatment or hospitalization. Additionally, there is evidence of right shoulder pain; however, the claimant maintains full motor strength in the upper extremities. Furthermore, right shoulder MRI was normal, as detailed below. Notably, the claimant failed to provide any testimony related to right shoulder problems and he has had minimal treatment. While there is some evidence of neck pain complaints, cervical radiography is unremarkable and the claimant maintains full motor strength of the upper extremities. There is also mention of GERD, a sleep disorder, and hypertension, which remain stable and without complications. Nonetheless, the [ALJ] considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's [RFC].

(*Id.*)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id.*) In finding that Plaintiff's mental impairments did not meet or medically equal the criteria of listings 12.04 and 12.06, the ALJ considered the four broad functional areas, known as the

"paragraph B" criteria,[4] set out in the regulations for evaluating mental disorders and in the mental disorders listings. (Tr. 19.) The ALJ found that Plaintiff had mild limitations in each area, except in concentration, persistence, or pace, in which Plaintiff was moderately limited. (*Id.*) The ALJ assessed moderate limitations in concentration, persistence, or pace because:

> [T]he claimant is capable of sustaining focused attention and concentration sufficiently long enough to permit the timely and appropriate completion of tasks, such as caring for his personal needs, providing care for his 3 children, particularly as his wife is employed, drive, and watch television. In addition, he is able to take college level classes, currently taking an online class, towards a degree, and he is able to assist his children with their homework. Notably, the consulting psychologists found no more than mild limitation in concentration. In this area, the claimant's testimony and the objective medical evidence indicate that from a mental standpoint, the claimant has no more than moderate limitation.

(*Id.*) The ALJ then stated that the RFC, which was assessed before proceeding to step four, reflected the degree of limitation she found in the "paragraph B" mental function analysis. (Tr. 20.)

The ALJ determined that Plaintiff had the RFC to perform sedentary work "with an alternate sit/stand option every 30 to 60 minutes as needed,

[4] The four broad functional areas of mental functioning are: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. (Tr. 19.)

while remaining on task and at the work station" and with the following additional limitations:

> [The claimant] could climb ramps and stairs occasionally and never climb ladders, ropes, and scaffolds. He could balance and stoop occasionally and never kneel, crouch, or crawl. He needs to avoid hazards and vibrations. Mentally, the claimant is limited to unskilled work with simple tasks and simple decision-making. No limitations in contacts with others; however, interactions should be in a non-confrontational static environmental [sic] with no contact resolution, negotiations or arbitration as part of the tasks and with infrequent changes in tasks. The work can be goal-oriented, but not fast-paced.

(*Id.*) The ALJ stated that she had "considered all symptoms and the extent to which these symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence," as well as "the medical opinion(s) and prior administrative medical finding(s)." (*Id.*)

The ALJ determined that although Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, his statements concerning the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the] decision." (Tr. 21.) The ALJ explained that the objective medical evidence did not support the degree of limitation alleged since the onset date; Plaintiff's treatment was conservative with injection therapy, physical therapy, medications, and counseling; and he showed improvement in his lumbar range of motion, pain,

headaches, and depression. (Tr. 22-26.)

The ALJ then stated that she carefully considered Plaintiff's "testimony along with the medical, objective, and subjective evidence discussed." (Tr. 26.) The ALJ continued:

> To the extent that [the claimant's] testimony was consistent with that evidence, it is reflected in the [RFC]. Beyond that extent, the claimant's testimony simply was not consistent with or supported by the medical or objective evidence of record . . . . In addition, the claimant has described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. He is able to care for his personal needs independently, prepare meals for his family daily, and perform household chores, such as vacuuming, cleaning, and doing laundry (Exhibits 3E, 4E, testimony). In addition, he is able to provide care for his 3 children, particularly as his wife is employed. Similarly, his functional status in February 2020 shows his ability to walk 1 mile before having back and foot pain, and no difficulties with personal care, housekeeping and laundry, and meal preparation/cooking (Exhibit 8F/3). Despite his alleged lack of focus, he is able to take an online class currently, as well as take other classes since January 2020, studying and completing class assignments towards a college degree. Likewise, he is able to drive, taking his children to and from school or the afterschool program, shop for groceries, watch television, and handle his own finances. Notably, the treating source records, as detailed above, consistently indicate no problems with attention span. Overall, his ability to perform this wide range of normal and ordinary activities of daily living is inconsistent with his alleged symptoms and limitations and an inability to perform all work.

(Tr. 26-27.)

The ALJ also addressed the medical opinions of record. (Tr. 27-29.) The ALJ found Dr. Porche's examining opinions persuasive as "supported by

the fairly benign clinical examination findings, which fail[ed] to show more than reduced range of motion of the hips." (Tr. 27.) The ALJ found Dr. Stanley's opinions unpersuasive as follows:

> In his progress notes, Dr. Stanley opines that it is unlikely that the claimant will be able to work because of his combination of physical and psychological symptoms (Exhibit 14F/3). The [ALJ] deems this opinion evidence unpersuasive, as it is not supported by the objective mental status findings and course of conservative treatment with psychotropic medication and therapy, which has improved the claimant's mental symptoms. Notably, Dr. Stanley has not examined or treated the claimant until March 2020, which is inconsistent with his assessment that the claimant meets the 3 mental listings since December 2016, almost 4 years prior to the initial evaluation. Furthermore, Dr. Stanley's evaluation findings during the initial evaluation are fairly benign and his progress notes generally stated the claimant's reported subjective complaints, rather than the objective mental findings. Similarly, Dr. Stanley has not assessed the claimant's physical symptoms, despite his statement that the combination of physical and mental impairments preclude the claimant from working.

(Tr. 28.)

Similarly, the ALJ found Dr. Anderton's opinions unpersuasive in part and partially persuasive in part, as follows:

> Dr. Anderton concurred with Dr. Stanley's opinion that it appears unlikely the claimant will be able to work due to his combined mental and physical symptoms. . . . She concurs with Dr. Stanley that the claimant cannot maintain employment, at least as of June 18, 2020. The [ALJ] deems this opinion evidence partially persuasive to the extent it is consistent with no more than moderate limitations as described (Exhibit 21F). However, the remainder of the opinions noting markedly impaired concentration are unpersuasive, given the fairly benign mental status findings, consistent with only a depressed and anxious mood, no suicidal ideation, and only mildly impaired

> concentration on actual mental testing. Similarly, there is no medical evidence of the need for psychiatric hospitalization and the claimant's treatment has remained conservative, initially with Zoloft that was changed to Cymbalta, and with therapy. Furthermore, a finding of disabled or unable to work is reserved for the Commissioner . . . . As noted throughout this decision, the claimant's ability to care for himself and his 3 minor children do [sic] not comport with marked limitations based on mental impairments and simply are not supported by the treatment notes contained within the treatment notes.

(Tr. 28-29.)

The ALJ also considered the State agency non-examining doctors' opinions and found them to be "persuasive" to the extent they were consistent with a finding of not disabled. (Tr. 29.) The ALJ stated:

> While [the State agency medical consultants' opinions in Exhibits 1A and 3A are] consistent with a finding of not disabled, the [ALJ] has reduced the claimant's [RFC] to no more than sedentary work with a sit/stand option and with additional postural and environmental restrictions, based on updated medical evidence that shows mild progression of the claimant's lumbar degenerative disc disease, as well as obesity and plantar fasciitis. . . .
>
> The [ALJ] has considered the opinion evidence by the State agency psychologists finding that the claimant's mental disorder of depressive, bipolar and related disorders is [sic] non-severe (Exhibits 1A, 3A). The [ALJ] deems this opinion evidence persuasive to the extent it establishes that the claimant is not disabled; however, updated mental health evidence shows that while the claimant's mental impairments are severe, he would not be precluded from performing unskilled work with additional mental restrictions, as defined in the assessed [RFC].

(*Id.*)

Then, at step four, the ALJ determined that Plaintiff was unable to

perform his past relevant work. (Tr. 29-30.) At the fifth and final step of the sequential evaluation process, considering Plaintiff's age, education, work experience, RFC, and the VE's testimony, the ALJ determined that there were jobs existing in significant numbers in the national economy that Plaintiff could perform, such as a table worker (DOT No. 739.682-182; sedentary, unskilled work with an SVP of 2), a final assembler (DOT No. 713.687-016; sedentary, unskilled work with an SVP of 2), and a semiconductor bonder (DOT No. 726.585-066; sedentary, unskilled work with an SVP of 2). (Tr. 30-31.) Therefore, the ALJ concluded that Plaintiff was not disabled from December 26, 2016 through March 9, 2021. (Tr. 31.)

**C. Analysis**

The Court finds that a remand is required for the ALJ's failure to specify the length of time that Plaintiff needed to remain in the new position after alternating positions every 30-60 minutes as part of the RFC assessment. The ALJ determined that Plaintiff had the RFC to perform a reduced range of sedentary work "with an alternate sit/stand option every 30 to 60 minutes as needed, while remaining on task and at the work station." (Tr. 20.) Contrary to Defendant's position, the ALJ did not state the length of time needed in the alternate position; rather, she only stated the frequency of alternating positions – every 30 to 60 minutes. This was an error.

As stated in SSR 96-9p, 61 F. Reg. 34478 (July 2, 1996):

> An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. The extent of the erosion will depend on the facts in the case record, such as *the frequency of the need to alternate sitting and standing and the length of time needed to stand*. The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing.

*Id.* at 34482 (emphasis added). Moreover, the Court cannot assume that the error was harmless. As stated in SSR 83-12, "most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task." Further, "[u]nskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will." *Id.* When there are unusual limitations, a VE "should be consulted to clarify the implications for the occupational base." *Id.*

Where an ALJ has failed to specify either the frequency of the need to alternate sitting and standing or the length of time needed to stand, or both, courts have found a remand to be necessary. *See, e.g.*, *France v. Comm'r of Soc. Sec.*, No. 3:20-cv-2396, 2022 WL 465680, *16, *19 (N.D. Ohio Jan. 24, 2022) (report and recommendation adopted by 2022 WL 462835 (N.D. Ohio Feb. 15, 2022)) (noting the ALJ failed to specify the frequency of the need to alternate positions and how long he believed [plaintiff] would need to remain in a standing position at any given time; and the ALJ's failure to comply with

the requirements of SSR 96-9p resulted in lack of substantial evidence to support the RFC and prejudice to plaintiff, requiring a remand); *Herren v. Saul*, No. 20-CV-156, 2021 WL 1192394, *2 (E.D. Wis. Mar. 30, 2021) (finding that the ALJ's failure to explain the basis for the fifteen minutes of standing and how frequently plaintiff was allowed to switch positions required a remand); *Waltemire v. Colvin*, No. 13-CV-1283-DDC, 2014 WL 3809189, *7 (D. Kan. Aug. 1, 2014) (finding "a sit/stand option that includes no specific details about the frequency of any need the claimant 'may have to alternate sitting and standing and the length of time needed to stand' is not specific enough to be a reliable basis to analyze the erosion of the occupational base or the total number of jobs that the claimant can perform").

Similarly, here, the ALJ's failure to state the length of time needed in the alternate position was an error requiring a remand, particularly since the ALJ also failed to explain the basis for her finding that Plaintiff was capable of alternating positions every 30 to 60 minutes and that Plaintiff could remain on task while changing his position. *See Chance v. Comm'r of Soc. Sec.*, No. 3:21-CV-156-DAR, 2022 WL 1046088, *7 (N.D. Ohio Apr. 7, 2022) (stating the ALJ failed to explain what evidence led him to believe that the sit/stand option would not result in being off task for more than ten minutes); *Herren*, 2021 WL 1192394 at *2 (finding that the ALJ's failure to explain the basis for the fifteen minutes of standing and how frequently plaintiff was

allowed to switch positions required a remand). The ALJ's failure to comply with the requirements of SSR 96-9p resulted in lack of substantial evidence to support the RFC assessment, requiring a remand. *See France*, 2022 WL 465680 at *19.

In light of this conclusion, it is unnecessary to address Plaintiff's remaining arguments on appeal. *See Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam); *Freese v. Astrue*, No. 8:06-cv-1839-T-EAJ, 2008 WL 1777722, at *3 (M.D. Fla. Apr. 18, 2008); *see also Demenech v. Sec'y of the Dep't of Health & Hum. Servs.*, 913 F.2d 882, 884 (11th Cir. 1990) (per curiam). However, since on remand the ALJ would be reconsidering Plaintiff's RFC assessment, the ALJ should also reevaluate Plaintiff's subjective statements and his limitations in concentration, persistence, and pace.

Accordingly, it is **ORDERED**:

1. The Commissioner's decision is **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g), with instructions to the ALJ to reconsider the RFC assessment and conduct any further proceedings deemed appropriate.

2. The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions, and close the file.

3. The judgment should state that if Plaintiff were to ultimately

prevail in this case upon remand to the Social Security Administration, any motion for attorney's fees under 42 U.S.C. § 406(b) and/or 42 U.S.C. § 1383(d)(2) must be filed within fourteen (14) days from plaintiff's counsel's receipt of any "close-out" letter. The motion must include the agency letter stating the amount of past-due benefits withheld, include any applicable contingency fee agreement, and establish the fee is reasonable for the services rendered. This Order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.

**DONE AND ORDERED** at Jacksonville, Florida, on February 24, 2023.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record